UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
(WESTERN DIVISION)

| | |
|---|---|
| DAVE VOLZ, AHMED KHALEEL, NICHOLAS ARMADA, SCOTT COOK, STEPHANIE BRIDGES and JUAN SQUIABRO, Individually and on Behalf of Those Others Similarly Situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>THE COCA-COLA COMPANY and ENERGY BRANDS INC. (d/b/a GLACEAU),<br><br>        Defendants. | Civil Action No. 1:10-cv-00879 (Barrett, Judge)<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br>**(Jury Demand Endorsed Hereon)** |

   Plaintiffs Dave Volz, Ahmed Khaleel, Nicholas Armada, Scott Cook, Stephanie Bridges and Juan Squiabro (collectively, "Plaintiffs"), for their Consolidated Amended Class Action Complaint against Defendants The Coca-Cola Company ("Coca-Cola") and Energy Brands Inc. (d/b/a Glaceau) ("Glaceau") (Coca-Cola and Glaceau, collectively, the "Defendants") allege as follows upon information and belief based, *inter alia*, upon the investigation conducted by Plaintiffs and their Counsel, except as those allegations pertaining to Plaintiffs personally, which are alleged upon personal knowledge:

## NATURE OF THE CASE

   1.  This is a proposed class action on behalf of consumers of Ohio, Illinois, Florida, Missouri and U.S. Virgin Islands seeking redress for Defendants' deceptive advertising, sales and labeling practices, promissory estoppel, negligent misrepresentation and unjust enrichment in misrepresenting the contents of Defendants' Glaceau **Vitamin**water ("**Vitamin**water") and

representing that **Vitamin**water is a healthy beverage by: (1) using the name "**Vitamin**water," (2) prominently including on the label in bolded print "**nutrient enhanced water beverage**," (3) prominently including on the label "vitamins + water = all you need," (4) upon information and belief, marketing at point of sale "vitamins + water = what's in your hand," and (5) upon information and belief, advertising the product as healthy when, in fact , it is not solely vitamins and water but, rather, is fortified sugar water, much like a fortified sugar-sweetened snack, which contributes to, among other health problems, weight gain, obesity and diabetes, which are a national epidemic.

2.     Upon information and belief, there are eighteen flavors of **Vitamin**water sweetened with sugar, as opposed to flavors sweetened with artificial sweeteners, such as Nutrasweet™:

- Power-C-Dragonfruit (Vitamin C + Taurine)
- Energy – Tropical Citrus (Vitamin B + Guarana)
- Revive – Fruit Punch (Vitamin B + Potassium)
- Multi-V – Lemonade (Vitamin A to Zinc)
- Focus – Kiwi-Strawberry (Vitamin A + Lutein)
- Essential – Orange-Orange (Vitamin C + Calcium)
- Formula 50 – Grape (50% Daily Dose of Vitamins)
- Defense – Raspberry-Apple (Vitamin C + Zinc)
- Rescue – Green Tea (Vitamin C + EGCG)
- Endurance – Peach-Mango (Vitamin E + Ribose)
- Vital-T – Lemon Tea (Vitamin C + Vitamin E)
- Balance – Cran-Grapefruit (Vitamin C + Glucosamine)
- B-Relaxed – Jackfruit-Guava (Vitamin B + Theanine)
- Charge – Lemon-Line (Vitamin B + Electrolytes)
- XXX – Acai-Blueberry-Pomegranate (Triple Antioxidants)
- Dwnld – Berry-Cherry (daily download of Vitamins and Antioxidants)
- Connect – Black-Cherry-Lime (Caffeine + 8 key Nutrients)
- Spark – Grape-Blueberry (Vitamin E + Choline)

3.     Every flavor of **Vitamin**water contains, or contained during the Class Period, the following misleading representations on its label – the name "**Vitamin**water" (and the name's misleading color scheme, reflected on the **Vitamin**water labels attached as Exhibits A-K),

2

"**nutrient enhanced water beverage**" (bold in original), and the statement "vitamins + water = all you need."

4.      The very prominent name of the product, "**Vitamin**water," misleadingly suggests to the consumer that the product only contains vitamins + water, which is only reinforced by the color scheme on each label which has "vitamin" in bolded black and "water" separately in white, suggesting to the consumer that these are the only two ingredients when a third key unnamed ingredient – sugar – is also present and the product is actually vitamin sugar water.

5.      The prominent statement on the label in bolded black "**nutrient enhanced water beverage**" suggests to the consumer that it contains only vitamins and water when, in reality, it also contains, among other ingredients, a significant amount of a third major ingredient not mentioned in its advertising slogans or product name– sugar.

6.      Upon information and belief, every label during the Class Period contained the statement, "**nutrient enhanced water beverage**."

7.      The prominent statement on the label that "vitamins + water = all you need" suggests to the consumer that the product is just vitamins + water when, in reality, it also contains, among other ingredients, a significant amount of a third major unnamed ingredient-sugar.

8.      Upon information and belief, every flavor during the Class Period, at some point, contained the statement on its label "vitamins + water = all you need."

9.       The advertisement at point of sale, "vitamins + water = what's in your hand" misleadingly suggests to the consumer that the product is just vitamins + water when, in reality, the product is vitamin sugar water.

10.      **Vitamin**water is, in reality, a fortified, sugar-sweetened snack food.

3

11.     Upon information and belief, despite the misleading names of several of the flavors, such as Lemonade, Berry-Cherry, Peach-Mango, Grape, and Kiwi-Strawberry, **Vitamin**water contains negligible amounts of fruit juice (less than 1%), but rather is predominantly water and sugar.

12.     Defendants further deceive consumers by marketing, advertising, and labeling **Vitamin**water's myriad flavors with superficially health-conscious names like: "Defense", "Rescue," "Energy," "Power-C," "Balance," "Focus," "Revive," "Endurance," "Essential," "B-Relaxed," "Vital-T," "Charge," and "Multi-V."

13.     Each flavor is accompanied by a deceptive slogan touting the purported benefits of drinking that particular flavor and suggesting that the inclusion of at least one nutrient in that flavor may help a consumer maintain healthy dietary practices. For example:

(a)      "XXX" flavor – "drink XXX because it gives you the benefits of antioxidants to fight free radicals and help support your health ..." (Exhibit C) (emphasis added)

(b)     "Power-C" flavor – "if you ... just want to help in the fight for your overall health, we recommend this bottle. It's got zinc and 120% of your daily value of vitamin C per serving to help support your immune system." (Exhibit H) (emphasis added)

(c)     "Defense" flavor – "If you've had to use sick days because you've actually been sick then you're seriously missing out, my friends. See, the trick is to stay healthy and use sick days to, um, not go in, and this combination of zinc and fortifying vitamins can help keep you healthy as a horse, so drink up . . ." (Exhibit I) (emphasis added)

14.     These deceptive and misleading statements bombard consumers with a message of purported nutritional benefits and suggest that the product will keep you healthy when, in reality, **Vitamin**water is a fortified sugar-sweetened snack beverage.

15.     The statements on flavors like "Power-C," "Defense," and XXX" that explicitly state that their consumption can keep you <u>healthy</u> imply that that the nutrient content of

4

**Vitamin**water may help a consumer maintain healthy dietary practices when, in reality, it contributes to, among other health concerns, the major health risk in society today, diabetes, weight gain, and obesity.

16. The fact that the actual sugar content of **Vitamin**water is on the FDA mandated label does not eliminate the fact that **Vitamin**water's labeling and marketing are misleading.

17. These statements are deceptive and misleading and Defendants knew, or reasonably should know, that the statements are deceptive and misleading. And contrary to the deceptive advertising, the product leads to several major health risks in our society, which are diabetes, weight gain, and obesity.

18. The overriding message of these false, unfair and misleading claims is that **Vitamin**water is a healthy "vitamins + water" alternative to a sugary soft drink like Coca-Cola Classic when, in reality, **Vitamin**water is nothing more than a heavily fortified sugary snack beverage that contributes to obesity and provides few nutritional benefits.

19. The collective effect of these deceptive statements, including the products' name, is to mislead a reasonable consumer into believing that **Vitamin**water is composed entirely of vitamins and water and/or that it is a beneficial source of nutrients rather than a snack, which can lead to diabetes, weight gain, and obesity, of little or no nutritional value that has been fortified for the sole purpose of claiming or implying that the product provides certain (and often outlandish) nutritional benefits.

20. Upon information and belief, Defendants have profited tremendously from their deceptive marketing of **Vitamin**water. Consumers like Plaintiffs who want to avoid soft drinks, for health reasons or otherwise, may choose **Vitamin**water as a supposed healthy alternative to a sugary soda.

5

21.     Defendants charge a higher price for **Vitamin**water. On average, Defendants charge a premium for a bottle of **Vitamin**water (approximately $1.70) compared with their other soft drinks (Coca-Cola Classic, Sprite, etc.) Sales of **Vitamin**water are estimated at more than half a billion dollars annually, with **Vitamin**water significantly increasing in sales each year during the Class Period.

22.     Defendants' misrepresentations about **Vitamin**water – including its dietary-supplement name and outrageous health promises – bombard consumers with a message that the heavily fortified, sugar-sweetened product is healthy and explicitly suggest that the product is only "vitamins + water" when, in fact, it is fortified sugar water that contributes to weight gain, diabetes, and obesity.

### JURISDICTION AND VENUE

23.     This Court has jurisdiction over this action under 28 U.S.C. §1332, *et seq.* because there is diversity of citizenship between Plaintiffs and Defendants and the amount in controversy, including interest and costs, satisfies the jurisdictional arguments.

24.     Venue is proper in this Court under 28 U.S.C. §1391 because many of the acts in furtherance of the alleged misconduct occurred within this District and because Defendants are authorized to conduct business in this District and have availed themselves of the laws and markets within this District through the promotion, marketing, distribution, and sale of their products in this District.

## PARTIES

25.     Plaintiff Dave Volz ("Plaintiff Volz") resides in Loveland, Ohio and bought **Vitamin**water within this District.  Plaintiff Volz purchased **Vitamin**water Multi-V Lemonade and Dwnld flavors at their premium prices approximately once per week between May, 2010 and July, 2010. Plaintiff purchased **Vitamin**water from Kroger in Warren County. Occasionally, Plaintiff Volz would purchase the product in bulk to maintain a steady supply of **Vitamin**water in his home.

26.     Plaintiff Ahmed Khaleel ("Plaintiff Khaleel") resides in Chicago, Illinois. Plaintiff Khaleel relied on Defendants' false, misleading and deceptive written misrepresentations.  Had Plaintiff Khaleel known the truth, he would not have purchased the produce or paid an inflated prict.  Plaintiff Khaleel purchased **Vitamin**water at least once a week since approximately December 2010.  He usually purchased **Vitamin**water near where he resides at either CVS or 7/11, but has also purchased it at other locations.  He has purchased most all flavors offered.

27.     Plaintiff Nicholas Armada  ("Plaintiff Armada") resides in Miami, Florida. Plaintiff Armada relied on Defendants' false, misleading and deceptive written misrepresentations.  Had Plaintiff Armada known the true facts, he would not have purchased the product, nor paid the inflated prices for the product.

28.     Plaintiff Scott Cook ("Plaintiff  Cook") resides in Ft. Lauderdale, Florida. Plaintiff Cook relied on Defendants' false, misleading and deceptive written misrepresentations. Had Plaintiff Cook known the true facts, he would not have purchased the product, nor paid the inflated prices for the product.

29.     Plaintiff Stephanie Bridges ("Plaintiff Bridges") resides in Kansas City, Missouri. Through 2008 and 2009, Plaintiff Bridges purchased **Vitamin**water on a regular basis, including at Costco and Target.  Plaintiff Bridges purchased multiple flavors, including the "XXX Acai-Blueberry-Pomegranate," "Power-C Dragonfruit," and the "Revive Fruit Punch" flavors. Plaintiff Bridges paid a price premium for **Vitamin**water under the belief that it was a healthier alternative to other readily available beverages.  Plaintiff Bridges would not have purchased **Vitamin**water for a premium price had she known that, rather than a "healthy" "water beverage" she was purchasing a sugary soft drink that promotes obesity and diabetes.

30.     Plaintiff Juan Squiabro ("Plaintiff Squiabro") resides in the U.S. Virgin Islands. Plaintiff Squiabro purchased and drank **Vitamin**water based upon deceptive, misleading and unfair written and oral misrepresentations to advertise **Vitamin**water.

31.     Plaintiffs read the misleading labels.

32.     Plaintiffs are health-conscious and relied upon the deceptive and misleading information on **Vitamin**water's labels in deciding to purchase the product instead of a soda or other beverage.

33.     Coca-Cola is a Delaware corporation and has a principal place of business in Atlanta, Georgia. In 2007, Coca-Cola expanded its still beverage offerings by purchasing Defendant Energy Brands Inc, also known as Glaceau, the maker of **Vitamin**water. Coca-Cola is a public company traded on the NYSE trading under the ticker symbol "KO."

34.     Glaceau is a wholly owned subsidiary of Coca-Cola and has a principal place of business in Whitestone, New York.  Coca-Cola purchased Glaceau on June 7, 2007.

35.     At all relevant times, Defendants advertised and offered for sale **Vitamin**water at retail stores to consumers throughout this District.

## **GENERAL ALLEGATIONS**

36.     Seeking to cash in on the success of bottled water, the beverage industry contrived a new way to boost sales – "functional" snack beverages fortified with, among others, vitamins.

37.     According to its 10-K for the fiscal year ended December 31, 2009, Coca-Cola acquired Glaceau in 2007, "in an effort to expand our still beverage offerings."

38.     Defendants recognize the importance of marketing and labeling **Vitamin**water as a "healthy" alternative to sugary soft drinks. In its Form 10-K Annual Report filed with the SEC for the fiscal year ended December 31, 2009, Coca-Cola stated, "Consumers, public health officials and government officials are becoming increasingly concerned about the public health consequences associated with obesity, particularly among young people. In addition, some researchers, health advocates and dietary guidelines are encouraging consumers to reduce consumption of sugar-sweetened beverages, including those sweetened with HFCS [high fructose corn syrup] or other nutritive sweeteners. Increasing public concern about these issues ... may reduce demand for our beverages, which could affect our profitability." (emphasis added)

39.     But **Vitamin**water is a "sugar-sweetened beverage" little different from Coca-Cola Classic or other soft drinks except that it is fortified and uncarbonated.

40.     The name "Coca-Cola" (which consumers would likely associate with snack foods) does not appear on any **Vitamin**water packaging or labeling.

41.     Defendants aggressively marketed, labeled, and advertised **Vitamin**water as a fortified drink to attract health-conscious customers like Plaintiffs.

42.     Defendants deceive consumers into believing that **Vitamin**water provides remarkable health benefits by marketing, advertising and labeling its flavors with names like "Defense," "Balance," " Energy," and "Focus."

9

43.     Upon information and belief, in **Vitamin**water in-store advertising, Defendants claim that these products are "vitamins + water = what's in your hand." This is a false, misleading, deceptive statement because **Vitamin**water is not composed solely of vitamins and water, but contains 33 grams of sugar per twenty ounce bottle as well.

44.     Defendants claim that **Vitamin**water is a "**nutrient enhanced water beverage**," "vitamins + water = all you need," and "vitamins + water – what's in your hand." But this description is false, deceptive and misleading because the beverage does not contain simply vitamins and water and is a heavily fortified sugar-sweetened beverage.

45.     As set forth above, each **Vitamin**water label is misleading because, in fact, (i) the product is fortified sugar water; and (ii) the product makes misleading health claims touting the purported dietary benefits of drinking **Vitamin**water when, in fact, it contributes to health problems such as, among others, diabetes, weight gain, and obesity.

46.     Upon information and belief, while all of the flavors contained the misrepresentations set forth above during the Class Period, some of the labels have been recently altered to omit the "vitamins + water = all you need" claim.

47.     The central message of Defendants' claims about the health benefits of **Vitamin**water is that drinking it provides a significant dietary supplement without the ill effects of other sugary soft drinks. However, this message is false, misleading, and deceptive.

48.     Each twenty ounce bottle of **Vitamin**water contains approximately 33 grams of sugar.

49.     Defendants' labeling, marketing and advertising of **Vitamin**water violates Ohio law.

50.     Defendants have made millions of dollars at the expense of public health and trust and continue to make millions through deceptive and misleading advertising and marketing practices.

51.     In fact, FDA regulations restrict health claims to foods that meet certain minimum nutrient levels, colloquially termed the "jelly bean rule," to prevent food producers from encouraging consumption of junk foods like **Vitamin**water by fortifying them with nutrients. The FDA has explained that fortification of a food of little or no nutritional value, like **Vitamin**water, for the sole purpose of qualifying that food for a health claim is misleading.

52.     Plaintiffs relied on Defendants' false, misleading and deceptive written misrepresentations that **Vitamin**water is a healthy dietary supplement beverage including, but not limited to, the statements "vitamins + water = all you need," the name and health slogans on each flavor, the name of the product itself – "**Vitamin**water," and the statement "nutrient enhanced water beverage" – in deciding to purchase the beverage. Had Plaintiffs known the truth that the statements they relied upon were false, misleading, deceptive and unfair, they would neither have purchased **Vitamin**water, nor paid the premium price charged for it.

## CLASS ALLEGATIONS

53.     Plaintiffs bring this action as a class action pursuant to Fed.R.Civ.P. 23 on their own and on behalf of a Class defined below.

54.     Plaintiffs seek certification of the following Class defined as:

> All Ohio, Illinois, Missouri, Florida and U.S. Virgin Islands residents who purchased **Vitamin**water in those states and territories between June 7, 2007 and the present (the "Class").

55.     Excluded from the Class are Defendants, and the subsidiaries, parents, affiliates, or controlled persons or entities of Defendants, as well as their officers and directors and their family members, and their employees, or representatives.

56.     The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are millions of consumers who purchased **Vitamin**water in Ohio, Illinois, Missouri, Florida and the U.S. Virgin Islands.

57.     Plaintiffs' claims are typical of the claims of members of the Class, as the claims of the Class are based upon the same conduct affecting all Class members.

58.     Plaintiffs will fairly and adequately represent the interests of the Class and have retained counsel competent and experienced in class and consumer litigation. Plaintiffs have no interests that are contrary to, or in conflict with, those of the Class members that they seek to represent.

59.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Further, the interests of the Class in individually controlling the prosecution of separate actions is far outweighed by the superiority of maintaining a class action and, absent a class action, Defendants would face the impracticability of defending separate actions seeking the same relief.

60.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

61.     There is a well-defined community of interest in the questions of law and fact involved in this case. Common questions of law and fact exist as to all members of the putative class, and predominate over any questions solely affecting individual class members. Among questions of law and fact common to the class are:

(a)     Whether Defendants marketed, advertised, labeled, or sold **Vitamin**water to Plaintiffs and the Class using false, misleading and/or deceptive statements or representations;

(b)     Whether Defendants omitted and/or misrepresented material facts in connection with the marketing, advertising, labeling or sale of **Vitamin**water;

(c)     Whether Defendants negligently misrepresented the characteristics or benefits of **Vitamin**water;

(d)     Whether Defendants have been unjustly enriched;

(e)     Whether Plaintiffs and the Class have an adequate remedy at law;

(f)     Whether Plaintiffs and the Class are entitled to equitable and declaratory relief.

62.     The identities of Class members are ascertainable and notice may be provided to the class members by first class mail, internet or other publication, or by notifications posted at point of sale.

## CAUSES OF ACTION

### COUNT I
**(Violation of Ohio Deceptive Trade Practices Act R.C. §4165.01 *et seq*.)**

63.     Plaintiff Volz realleges the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

64.     Defendants have made and continue to make deceptive, false and misleading statements concerning the health and nutritional benefits of heavily fortified, sugar-sweetened **Vitamin**water, namely manufacturing, selling, marketing, packaging and advertising **Vitamin**water to consumers with false and misleading statements concerning its content, as alleged herein.  These unfair and deceptive statements include, but are not limited to, the name of the product, **Vitamin**water, Defendants' representations that "vitamins + water = all you need,"

13

"vitamins + water – what's in your hand," and that it is a "**nutrient enhanced water beverage**" when in fact it is a nutrient enhanced sugar water beverage. In fact, the product, if accurately marketed, would be called "**Vitamin**sugarwater" and risks of health concerns associated with the beverage would be disclosed.

65.     Defendants have unfairly and deceptively represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have.

66.     Defendants have unfairly and deceptively represented that goods or services are of a particular standard, quality, or grade that they are not.

67.     Defendants' deceptive, false and misleading statements deceived Plaintiffs and the Class.

68.     Defendants' deception is material as it influenced Plaintiffs' purchasing and payment decisions.

69.     Plaintiff Volz and the Class have been damaged as a direct and proximate result of Defendants' deception.

70.     Defendants have violated the Ohio Deceptive Trade Practices Act, R.C. §4165.01 *et seq*.

71.     Plaintiff Volz and the Class are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

72.     Defendants' conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiff Volz and the Class to punitive damages and attorneys' fees in an amount to be determined at trial.

73.     Defendants continue to engage in these deceptive and misleading acts and practices, and Plaintiff Volz and the Class continue to be damaged by Defendants' conduct. Accordingly, Plaintiff Volz and the Class are also entitled to injunctive relief to prohibit Defendants from continuing to perpetrate their deceptive scheme.

## COUNT II
### (Violation of the Ohio Consumer Sales Practices Act R.C. §1345.01 *et seq*.)

74.     Plaintiff Volz realleges the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

75.     Defendants have committed and continue to commit unfair and deceptive acts or practices in connection with a consumer transaction, namely manufacturing, selling, marketing, packaging and advertising **Vitamin**water to consumers with false and misleading statements concerning its content, as alleged herein.  These unfair and deceptive statements include, but are not limited to, the name of the product, **Vitamin**water, Defendants' representations that "vitamins + water = all you need," "vitamins + water – what's in your hand," and that it is a "nutrient enhanced water beverage" when in fact it is a fortified sugar water beverage that contributes to health problems such as weight gain, diabetes, and obesity.

76.     Defendants have unfairly and deceptively misrepresented that **Vitamin**water has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have.

77.     Defendants have unfairly and deceptively misrepresented that **Vitamin**water is of a particular standard, quality, grade, style, prescription, or model that it is not.

78.     Defendants have committed and continue to commit these unfair and deceptive acts while knowing that **Vitamin**water, among others, is not merely vitamins + water but in fact fortified sugar water.

15

79.     Defendants' unfair and deceptive practices deceived Plaintiffs and the Class.

80.     Defendants' unfair and deceptive practices were material as they influenced Plaintiffs' purchasing and payment decisions.

81.     Plaintiff Volz and the Class have been damaged as a direct and proximate result of Defendants' deceptive and unfair practices.

82.     Defendants have violated the Ohio Consumer Sales Practices Act, R.C. §1345.01 *et seq.*

83.     Plaintiff Volz and the Class are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

84.     Defendants' conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiff Volz and the Class to punitive damages and attorneys' fees in an amount to be determined at trial.

85.     Defendants continue to engage in these deceptive and unfair practices, and Plaintiff Volz and the Class continue to be damaged by Defendants conduct.  Accordingly, Plaintiff Volz and the Class are also entitled to injunctive relief to prohibit Defendants from continuing to perpetrate their deceptive scheme.

## COUNT III
### (Violations of the Illinois Consumer Fraud and Deception Practices Act)

86.     Plaintiff Khaleel reallege the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

87.     The purpose of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce.  The business practices alleged above violate

16

the ICFA in that it is the misbranding of food which suggests that its nutrient content may help consumers maintain healthy dietary practices when it is really a snack food that has been fortified to provide the claimed nutritional benefits.  Moreover, Defendants deceptively use the name for a food containing two or more ingredients which includes or suggests a name of one or more, but not all, such ingredients, even though it names all its ingredients elsewhere in labeling.

88.     Plaintiff Khaleel and the other members of the Class have suffered a substantial injury by virtue of buying **Vitamin**water that they would not have purchased absent Defendants' unfair marketing, advertising, packaging and labeling or by paying an excessive premium price for the Defendants' products.

89.     There is no benefit to consumers or competition by deceptively marketing, advertising, packaging and labeling unhealthy water beverages as healthy.

90.     In fact, Defendant Coca-Cola was recently advised by the Food & Drug Administration ("FDA") that its fortification of another soft drink (Coke Plus) violated federal law against misbranding products because both the name mischaracterizes the ingredients and because it was inappropriate to fortify snack foods.  Defendants have misbranded its **Vitamin**water product suggesting that because of its nutrient content it may help customers maintain a healthy dietary practice when it is really a snack food loaded with sugar, which has been fortified to provide the claimed nutritional benefits in violation of FDA regulations.  *See* 21 C.F.R. §§101.65(d)(1)(i) and 104.20.

91.     Defendants' marketing and advertising of **Vitamin**water is unconscionable and constitutes unfair and deceptive methods of competition in violation of one or more of the following:

17

(a)     The standards of unfairness and deception set forth and interpreted by the Illinois courts, as set out in ICFA, 815 ILCS 505/2; and

(b)     The law against unfair deceptive trade practices, as incorporated into the ICFA, 815 ILCS 505/2.

92.     Given the vast number of consumers who have purchased **Vitamin**water, Plaintiff Khaleel and the Class have been damaged, and will be damaged in the future by the deceptive, undisclosed, unfair, confusing advertising, marketing and sale of **Vitamin**water.

93.     If left unchecked, Defendants' deceptive, unfair marketing and advertising methods are certain to damage Plaintiff Khaleel and the Class in the future.  As a result, Plaintiff Khaleel and the Class are entitled to an order enjoining such future conduct.

94.     Defendants engaged in such conduct in the course of trade or commerce.

95.     Defendants intended that Plaintiff Khaleel and the Class members rely on the above-described misrepresentations in order to profit from the sales of **Vitamin**water.

96.     Plaintiff Khaleel and the Class members relied on these misrepresentations and were damaged when they purchased **Vitamin**water in reliance on these misrepresentations.

97.     Plaintiff Khaleel is entitled to an award of his attorneys' fees pursuant to ICFA, 815 ILCS 505/10a.

## COUNT IV
### (Violations of Florida's Deceptive and Unfair Trade Practices Act)

98.     Plaintiffs Armada and Cook reallege the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

99.     The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or

practices in the course of any trade or commerce.  The business practices alleged above violate FDUPTA in that the misbranding of food suggests that its nutrient content may help consumers maintain healthy dietary practices when, in fact, it is a snack food that has been fortified to provide Defendants' claimed nutritional benefits.  Moreover, Defendants' deceptive use of the name for a food containing two or more ingredients which includes or suggests a name for one or more, but not all, such ingredients, even though it names all its ingredients elsewhere in labeling.

100.    Plaintiffs Armada and Cook and the other Class members have suffered damages by virtue of buying **Vitamin**water that they would not have purchased but for Defendants' unfair marketing, advertising, packaging and labeling, or by paying an excessive premium price for Defendants' products.

101.    There is no benefit to consumers or competition by deceptively marketing, advertising, packaging and labeling unhealthy water beverages as healthy.

102.    In fact, Defendant Coca-Cola was recently advised by the FDA that its fortification of another soft drink (Coke Plus) violated federal law against misbranding products because both the name mischaracterizes the ingredients and because it was inappropriate to fortify snack foods.  Defendants have misbranded its **Vitamin**water product suggesting that because of its nutrient content it may help customers maintain a healthy dietary practice when it is really a snack food loaded with sugar, which has been fortified to provide the claimed nutritional benefits in violation of FDA regulations.  *See* 21 C.F.R. §§101.65(d)(1)(i) and 104.20. By misbranding **Vitamin**water, Defendants have consciously disregarded federal regulations and FDUTPA.

103.    Defendants' marketing and advertising of **Vitamin**water is unconscionable and constitutes unfair and deceptive methods of competition in violation of one or more of the following:

    (a)    The standards of unfairness and deception set forth and interpreted by the federal courts, as out in FDUTPA, §§501.203(3)(b) and 501.204; and

    (b)    The law against unfair deceptive trade practices, as incorporated into the FDUTPA, §§501.203(3)(c) and 501.204.

104.    Given the vast number of consumers who have purchased **Vitamin**water, Plaintiffs Armada and Cook and the Class have been damaged, and will be damaged in the future by the deceptive, undisclosed, unfair, confusing advertising, marketing and sale of **Vitamin**water.

105.    If left unchecked, Defendants' deceptive, unfair marketing and advertising methods are certain to damage Plaintiffs Armada and Cook and the Class in the future.  As a result, Plaintiffs Armada and Cook and the Class are entitled to an order enjoining such future conduct.

106.    Plaintiffs Armada and Cook are entitled to an award of their attorneys' fees pursuant to FDUTPA §501.2105.

## COUNT V
### (Violation of the Missouri Merchandising Practices Act)

107.    Plaintiff Bridges realleges the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

108.    Plaintiff Bridges brings this claim under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §407.010, *et seq.*

109.    Throughout the Class Period, Defendants represented that **Vitamin**water is a "healthy," "nutrient enhanced water beverage" that "can provide a step towards better health by giving people an easy and convenient way to get more of the nutrients and hydration they need each day," among other representations.

110.    Defendants' falsities, misrepresentations, concealment and failure to disclose the true nature of **Vitamin**water constitutes a "deception, fraud … false promise, misrepresentation, unfair practice or the concealment, suppression, or omissions of any material fact," in violation of the MMPA.  *See* Mo. Rev. Stat. §407.020.

111.    Defendants' conduct constitutes an "unfair practice" under the MMPA because: (a) it is unethical, oppressive or unscrupulous; (b) causes substantial injury to consumers; (c) violates Defendants' duty of good faith by soliciting Missouri consumers in a dishonest manner without observing reasonable commercial standards of fair dealing; (d) is unconscionable; and (e) violates federal law intended to protect the public. *See* 15 C.S.R. §60-8.

112.    As a result of Defendants' wrongful conduct, Plaintiff Bridges and members of the Class suffered an ascertainable loss by paying more for **Vitamin**water than they would have had Defendants not engaged in a deception, fraud, false promise, misrepresentation, and unfair practice and had Defendants not concealed, suppressed or omitted material facts concerning the product, despite having a duty to disclose such information.

### COUNT VI
### (Unfair and Deceptive Trade Practices Under Virgin Island Law)
### [Consumer Protection Law of 1970 – Unfair Trade Practices
### 12A V.I.C. § 101, *et seq.*]

113.    Plaintiff Squiabor realleges the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

114.    The purpose of the Virgin Islands Consumer Protection Law is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of trade or commerce.

115.    Defendants engaged, and continue to engage, in a deceptive and unfair trade practice regarding the promotion of **Vitamin**water as a "healthy" beverage.

116.    Defendants' trade practices are deceptive and unfair to an objective and reasonable consumer in the Virgin Islands.

117.    The consumer protection laws of the Virgin Islands are to be liberally construed to protect the people of the Virgin Islands.

118.    Individual reliance is not a necessary of proof under the consumer protection statutes of the Virgin Islands because the laws are intended to be enforced by class action.  The standard is that of an objective and reasonable consumer in the Virgin Islands.

119.    Defendants' wrongful actions represent a deceptive and unfair trade practice in that Defendants unfairly took advance of the lack of knowledge, ability, experience, mathematical ability, or capacity of consumers when concealing, misrepresenting and failint ot make known the real health effects of **Vitamin**water.

120.    Plaintiff Squiabro is entitled to an award of attorneys' fees.

121.    Each Defendant is jointly and severally liable for the torts alleged herein.

<u>COUNT VII</u>
**(Unfair and Deceptive Trade Practices Under Virgin Islands Law)**
**[The Consumer Fraud and Deceptive Business Practices Act**
**12A V.I.C. § 301, *et seq.*]**

122.    Plaintiff Squiabro realleges the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

123.    The purpose of the Consumer Fraud and Deceptive Business Practices Act is to protect the consuming public from those who engage in fraudulent and deceptive acts in the course of trade or commerce.

124.    Defendants engaged in wrongful business practices by making fraudulent and deceptive oral and written statements regarding **Vitamin**water.

125.    Defendants' trade practices are deceptive and unfair to an objective and reasonable consumer in the Virgin Islands.

126.    The consumer protection laws of the Virgin Islands are to be liberally construed to protect the people of the Virgin Islands.

127.    Individual reliance is not a necessary of proof under the consumer protection statutes of the Virgin Islands because the laws are intended to be enforced by class action.  The standard is that of an objective and reasonable consumer in the Virgin Islands.

128.    Defendants' wrongful actions represent a fraudulent and deceptive trade practice in that Defendants unfairly took advantage of the lack of knowledge, ability, experience, mathematical ability or capacity of consumers when concealing, misrepresenting and failing to make known the real health effects of **Vitamin**water.

129.    Plaintiff Squiabro pleads the provision of the statute regarding an award of attorneys' fees.

130.    Each Defendant is jointly and severally liable for the torts alleged herein.

## COUNT VIII
### (Unjust Enrichment)

131.    Plaintiffs reallege the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

132.    Defendants have benefitted and been unjustly enriched by their wrongful conduct as alleged herein.

133.    Defendants have knowledge of these benefits and have voluntarily accepted and retained these benefits.

134.    The circumstances are such that it would be inequitable for Defendants to retain these gains without paying their value to Plaintiffs and the Class.

135.    Plaintiffs and the Class are entitled to the amount of Defendants' wrongful gains, including interest, resulting from its unlawful, unjust and inequitable misconduct as described above.

## COUNT IX
### (Promissory Estoppel)

136.    Plaintiffs reallege the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

137.    Defendants made clear and unambiguous representations and promises concerning the nutritional benefits and ingredients of **Vitamin**water. Defendants also concealed material facts relating to these representations and promises so as to render them deceptive and misleading.

138.    As a result of Defendants' representations, promises, and deceptive practices described herein, Defendants induced Plaintiffs and the Class to purchase **Vitamin**water.

139.    In reasonable reliance upon Defendants' representations and promises, Plaintiffs and the Class purchased **Vitamin**water.

140.    Reliance by Plaintiffs and the Class upon Defendants' misrepresentations and promises was reasonably foreseeable.

141.    Plaintiffs and the Class relied upon Defendants' representations and promises to their detriment, and as a direct and proximate result, Plaintiffs and the Class have suffered damages.

142.    Plaintiffs and the Class are entitled to compensatory damages, plus interest, attorneys' fees and costs.

## COUNT X
### (Negligent Misrepresentation)

143.    Plaintiffs reallege the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

144.    Defendants negligently and falsely represented the nutritional benefits and content of **Vitamin**water.  Defendants' misrepresentations were made in the course of their business and with respect to transactions in which they had a pecuniary interest, and Defendants supplied this false information to Plaintiffs and the Class in order to influence and guide their purchasing decisions.  Defendants engaged in ongoing, common and uniform misrepresentations to Plaintiffs and the Class.

145.    Defendants had a duty to exercise reasonable care to make accurate representations and promises to Plaintiffs and the Class about the nutritional benefits and content of **Vitamin**water.

25

146.    Defendants' breached their duty of care by, among others, failing to accurately communicate the ingredients in **Vitamin**water, including that it contained a significant amount of an unnamed third ingredient – sugar.

147.    Plaintiffs and the Class reasonably and justifiably relief upon Defendants' false and negligent representations and suffered damages as a direct and proximate result.

148.    Plaintiffs and the Class are entitled to compensatory damages, plus interest, attorneys' fees, and costs.

<u>**COUNT XI**</u>
**(Declaratory Judgment/Injunctive Relief)**

149.    Plaintiffs reallege the foregoing paragraphs of this Complaint and incorporate them by reference as if fully rewritten here.

150.    Defendants have engaged in deceptive and misleading advertising, labeling, and sale of **Vitamin**water as set forth above.

151.    Plaintiffs and the Class seek a declaration that, among others, Defendants have engaged in deceptive and misleading advertising, labeling and sale of **Vitamin**water, negligent misrepresentation, and have been unjustly enriched.

152.    Plaintiffs and the Class also seek preliminary and permanent injunctive relief to enjoin Defendants to stop their deceptive and misleading practices concerning the advertising, labeling, and sale of **Vitamin**water.

WHEREFORE, Plaintiffs demand relief as follows:

A.    That this action be certified as a class action under Fed.R.Civ.P. 23;

B.    Compensatory damages for Plaintiffs and the Class in an amount to be determined at trial;

26

C.      Injunctive relief enjoining Defendants from continuing to engage in the aforementioned false, misleading, and deceptive misconduct with regards to the advertising, packaging and labeling of **Vitamin**water;

D.      Interest, costs and attorneys' fees;

E.      A declaration that Defendants have committed the violations of law alleged herein;

F.      Judgment for punitive damages;

G.      Judgment for interest at the legal rate on the foregoing sums;

H.      Such other relief this Court deems appropriate.

Dated:  August 5, 2014     Respectfully submitted,

STATMAN, HARRIS & EYRICH, LLC

/s/ Brian T. Giles
Jeffrey P. Harris (0023006)
Brian T. Giles (0072806)
3700 Carew Tower
441 Vine Street
Cincinnati, OH  45202
(513) 621-2666 – Telephone
(513) 621-4896 – Facsimile
E-mail: *jharris@statmanharris.com*
E-mail: *bgiles@statmanharris.com*


STRAUSS TROY

/s/ Richard S. Wayne
Richard S. Wayne (0022390)
Joseph J. Braun (0069757)
150 E. Fourth Street
Cincinnati, OH  45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile
E-mail: *rswayne@strausstroy.com*
E-mail: *jjbraun@strausstroy.com*

DESAI LAW FIRM, P.C.
Aashish Y. Desai
3200 Bristol Street, Ste. 650
Costa Mesa, CA 92626
(949) 614-5830 - Tel
(949) 271-4190 - Fax
E-mail: aashish@desai-law.com

NEWPORT TRIALGROUP
Scott Ferrell
4100 Newport Place, Ste. 800
Newport Beach, CA 92660
(949) 706-6464 - Tel
(949) 706-6469 – Fax
sferrell@trialnewport.com

THE WRIGHT LAW OFFICE, P.A.
William C. Wright
301 Clematis Street, Suite 3000
West Palm Beach, FL  33401
(561) 514-0905 – Telephone
(561) 514-0906 – Facsimile
E-mail: *willwright@wrightlawoffice.com*

SHANK & HAMILTON, P.C.
Christopher S. Shank
David L. Heinemann
2345 Grand Blvd., Suite 1600
Kansas City, MO  64108
(816) 471-0909 – Telephone
(816) 471-3888 – Facsimile
E-mail: *chriss@shankhamilton.com*
E-mail: *davidh@shankhamilton.com*

THE PATE LAW FIRM
J. Russell B. Pate
Royal Dane Mall, 2nd Floor
P.O. Box 890
St. Thomas, VI  00804
(340) 777-5270 – Telephone
(340) 777-5266 – Facsimile
E-mail: *Pate@SunLawVI.com*


*Trial Attorneys for Plaintiffs and the Class*



## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


/s/ Richard S. Wayne
Richard S. Wayne (0022390)


045688.943.3647870_1.docx